**Juan CANDELARIA, Petitioner/Cross–Respondent**

v.

**The PEOPLE of the State of Colorado, Respondent/Cross–Petitioner.**

**No. 04SC657.**

Supreme Court of Colorado, En Banc.

Dec. 18, 2006.

Douglas K. Wilson, Colorado State Public Defender, Jason C. Middleton, Deputy Public Defender, Denver, Colorado, Attorneys for Petitioner/Cross–Respondent.

John W. Suthers, Attorney General, John J. Fuerst III, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent/Cross–Petitioner.

Justice COATS delivered the Opinion of the Court.

Both the People and the defendant petitioned for review of the court of appeals' judgment in *People v. Candelaria*, 107 P.3d 1080 (Colo.App.2004). Among other crimes, the defendant was found guilty of first degree murder, conspiracy to commit first degree murder, and attempt to commit first degree murder, on theories of both extreme indifference and deliberation. Although the court of appeals held the elements of extreme indifference murder and murder after deliberation to be logically inconsistent, it found that retrial was not required, instead vacating the judgments of conviction for conspiring to commit, attempting to commit, and committing extreme indifference murder.

Because the jury's findings of extreme indifference murder and murder after deliberation were not inconsistent, the judgment of the court of appeals is reversed in part. Because, however, the mittimus does not accurately reflect the jury's verdicts and the effect of its finding that the defendant violated more than one subsection of the first degree murder statute, the case is remanded to the court of appeals with orders to direct the correction of the mittimus.

## I.

The defendant, Juan Candelaria, was charged with first degree murder and a host of lesser offenses arising from a May 1997, gang-related shooting in Colorado Springs. Evidence at trial was sufficient to permit the jury to find that on the night in question the defendant drove a car with several armed individuals in search of P.M., to retaliate for a shooting incident involving P.M. earlier that evening; and when they eventually encountered four individuals in P.M.'s car, they fired as many as twenty-four rounds at it, killing G.R., a teenage passenger.

As pertinent to the issues before this court, the prosecution charged the defendant, in separate counts, with both the extreme indifference murder and the deliberate murder of G.R. It also charged the defendant, in a single count, with conspiracy to murder P.M., referencing in that count both the deliberation and extreme indifference subsections of the first degree murder statute. Similarly, it charged him with attempt to murder P.M., in a single count, again referencing both subsections of the murder statute.[1]

On a single verdict form, the jury found the defendant guilty of the first degree murder of G.R., and in response to the included interrogatories, indicated that it did so by finding that he committed murder in the first degree after deliberation, as well as by extreme indifference. On another verdict form, the jury found the defendant guilty of conspiring to commit the first degree murder of P.M., and similarly indicated in the included interrogatories that it found him guilty with regard to both definitions of first degree murder. Finally, in a third verdict form, it found the defendant guilty of the attempted first degree murder of P.M., also according to both definitions of first degree murder.

On the mittimus, the district court indicated that the defendant had been found guilty of both murder after deliberation and extreme indifference murder, but it entered a sentence only for murder after deliberation. Because the defendant was charged with conspiracy to murder P.M. in only one count (count 4), the district court entered only one conviction and 48-year sentence for conspiracy, but on the mittimus it described that conviction as conspiracy to commit first degree extreme indifference murder. Similarly, with regard to attempt (count 8), it entered only one conviction and a 48-year sentence for the defendant's attempt to murder P.M., but it described that conviction as attempt to commit first degree extreme indifference murder.

The court of appeals agreed with the defendant that the statutory elements of deliberate murder and extreme indifference murder made them logically inconsistent; however, it held that any prejudice to the defendant would be eliminated by simply vacating his convictions for extreme indifference murder, as well as conspiracy and attempt to commit extreme indifference murder. The appellate court therefore ordered vacated the judgment of conviction for the extreme indifference murder of G.R., as well as the defendant's convictions and sentences for conspiring and attempting to commit the first degree extreme indifference murder of P.M.

Both parties petitioned for a writ of certiorari. This court agreed to consider the questions whether verdicts based on deliberate murder and extreme indifference murder of the same person are indeed inconsistent and, if so, whether it was error not to remand for a new trial.

## II.

Nearly a quarter century ago, this court held that the Colorado Criminal Code defines a single offense of first degree murder, which can be committed in four different ways, as distinguished from defining four different offenses of first degree murder. *People v. Lowe*, 660 P.2d 1261, 1269–71 (Colo.1983). We therefore found that the legislature in-

---

1. The defendant was also charged with conspiring to murder all four young men in the car and attempting to murder the three men who were not killed. Because the jury acquitted the defendant of this additional conspiracy charge and found him guilty of attempting to murder the three men only according to a theory of extreme indifference, these additional verdicts are not at issue here.

tended to permit the same defendant to suffer only one conviction of murder for the killing of any single victim. *Id.* at 1270–71. We also considered it important, however, that the prosecution be permitted to charge multiple theories of first degree murder in separate counts, and that the jury's findings with regard to each count be preserved by special interrogatory. *Id.* at 1271. To that end, we prescribed a verdict form offering the jury an opportunity to find the defendant not guilty or guilty of first degree murder, and in the latter case, requiring the jury to indicate by special interrogatory the separate statutory subsections it found the defendant to have violated. *Id.* at 1271 n. 14.

Although these four subsections have been amended at various times, and two additional subsections have been added, the basic structure of the first degree murder statute—a single section of the criminal code with multiple subsections—has not changed. *See* § 18–3–102, C.R.S. (2006). Subsection (1)(d) of the statute continues to proscribe what has come to be referred to as "extreme indifference" murder, which has a rich history of evolution in statutory and case law, both before and since adoption of the current criminal code. *See, e.g., People v. Jones,* 193 Colo. 250, 565 P.2d 1333 (1977); *People ex rel. Russel v. Dist. Court,* 185 Colo. 78, 521 P.2d 1254 (1974); *Longinotti v. People,* 46 Colo. 173, 102 P. 165 (1909).

Particularly, after the extreme indifference murder statute had been construed to prohibit more than simply conduct that endangers many people, *see Jones,* 193 Colo. at 254, 565 P.2d at 1336, and after both it and second degree murder had been amended to require only a general criminal intent, we found extreme indifference murder indistinguishable from second degree murder. *People v. Marcy,* 628 P.2d 69, 78 (Colo.1981). Under a due process doctrine unique to the state constitution, *see People v. Estrada,* 198 Colo. 188, 191, 601 P.2d 619, 621 (1979), we therefore found it unconstitutional for the legislature to punish extreme indifference murder more severely than second degree murder. *See Marcy,* 628 P.2d at 78; *see also People v. Curtis,* 627 P.2d 734, 736 (Colo. 1981); *People v. Gurule,* 628 P.2d 99, 102

(Colo.1981); *People v. Lee,* 630 P.2d 583, 587–88 (Colo.1981).

The Colorado General Assembly immediately responded by amending section 18–3–102(1)(d). *See* ch. 212, sec. 4, § 18–3–102(1)(d), 1981 Colo. Sess. Laws 972, 973. As amended, subsection (1)(d) specifies that a person commits first degree murder if: "under circumstances *evidencing an attitude of universal malice* manifesting extreme indifference to the value of human life *generally,* he knowingly engages in conduct which creates a grave risk of death to a person, *or persons,* other than himself, and thereby causes the death of another." (Emphasis reflects the 1981 additions.) In 1988, we upheld the amended statute against a challenge similar to the one we had found persuasive in *Marcy. People v. Jefferson,* 748 P.2d 1223 (Colo.1988).

Although the language added by the legislature did not unambiguously avoid the equal protection difficulties we identified in *Marcy, see Jefferson,* 748 P.2d at 1234–37 (Quinn, J., dissenting), in light of the legislature's express reintroduction of the term "universal malice" and its clear intent, in the wake of *Marcy,* to define an offense distinguishable from, and of greater social consequence than, second degree murder, we understood its 1981 amendments as an attempt "to connect" this subsection with the state's earliest statutory proscription of depraved-heart murder. *See Jefferson,* 748 P.2d at 1231. We therefore construed the added language to proscribe killing acts of a particular description rather than attempting to carve out a new or intermediate culpable mental state. *Id.* at 1232. We found that the legislature had adequately differentiated subsection (1)(d) and second degree murder by limiting this particular form of first degree murder to conduct that, by its very nature and the circumstances of its commission, evidences a willingness to take human life indiscriminately, without knowing or caring who the victim may be or without having an understandable motive or provocation. *Id.* at 1233.

In *Marcy,* we equated knowingly engaging in conduct creating a grave risk of death and thereby causing death, even under circumstances manifesting extreme indifference to

the value of human life, with knowingly causing the death of another, second degree murder. · The 1981 amendments did not alter or remove any of the language leading us to that conclusion. Instead, they singled out particular killing acts, even though not committed intentionally or after deliberation, as deserving harsher treatment than other knowing homicides. Rather than being logically inconsistent with knowingly causing the death of any particular person, extreme indifference murder therefore became distinguishable from second degree murder only in that the actual killing act had to be one objectively demonstrating a willingness to take life indiscriminately.

Likewise, knowingly causing the death of another is, as a matter of law, not inconsistent with doing so intentionally and after deliberation, which is classified by the legislature as first degree murder. *See* § 18–1–503(3), C.R.S. (2006) ("If acting knowingly suffices to establish an element, that element also is established if a person acts intentionally."). Whether one acts with the conscious objective of killing a particular person, *see* § 18–1–501(5), C.R.S. (2006) (defining "intentionally" or "with intent"), or merely an awareness of a practical certainty that his conduct will cause that person's death, *see* § 18–1–501(6), C.R.S. (2006) (defining "knowingly"), he may do so in a manner that to a rational mind demonstrates an extreme indifference to the value of human life generally or he may do so in a manner that to a rational mind merely demonstrates a willingness to take the life of that particular individual. And whether or not one intends the death of a particular individual, it is the nature and circumstances of the killing act by which he seeks to accomplish his purpose that elevates the actor's culpability, rather than his intent or the result of his conduct.

In *Jefferson*, when we distinguished the killing conduct necessary for extreme indifference murder as a type not directed against a particular person, 748 P.2d at 1233, we therefore did not mean to suggest that one could not intentionally kill a particular individual in a manner demonstrating a willingness to take human life indiscriminately, or that doing so would not fall within subsec-

tion (1)(d). Although secreting an explosive device in an airplane to kill one of the passengers is certainly a murderous act directed at a particular, intended victim, it is not directed *solely* at the intended victim. Because it is an act gravely endangering the other passengers as well, it constitutes conduct evidencing an extreme indifference to the value of human life generally. By the same token, it is not difficult to envision killing conduct that fails to endanger more than a single individual and yet causes the death of another under circumstances evidencing a willingness to kill without knowing or caring precisely who the victim may be.

While we noted in *Jefferson* that the additional requirement of aggravated or extremely reckless conduct, manifesting a cold-blooded disregard for the value of human life generally, served to connect the 1981 amendments with the earliest attempts in this state to proscribe depraved-heart murder, 748 P.2d at 1231, we nowhere suggested that the elements of subsection (1)(d) murder were now identical with those of depraved-heart murder, as construed at the turn of the last century in *Longinotti v. People*, 46 Colo. 173, 174, 102 P. 165, 166 (1909). Unlike subsection (1)(d), the statute we construed in *Longinotti* contained a separate requirement that the killing be "perpetrated by any act greatly dangerous to the lives of others;" and although we quoted liberally from holdings in other jurisdictions appearing to exclude intentional killings altogether, we merely found the requirement of a depraved heart "to include those cases where a person has no deliberate intention to kill any particular individual," *Longinotti*, 46 Colo. at 176, 102 P. at 167, not to exclude all cases where such a deliberate intention was present.

As we also noted in *Jefferson*, the addition of the words, "or persons," was an unmistakable attempt to retreat from the confusion sown by *Jones*, where we upheld a conviction for extreme indifference murder even though death was caused by stabbing the defendant's targeted victim. *Jefferson*, 748 P.2d at 1232. By adding these words, rather than substituting them for the existing "person," however, the amended statute, necessarily comprehends killing acts that put at grave

risk a number of individuals not targeted by the defendant, as well as acts putting at risk a single victim, without knowing or caring who that may be. Similarly worded statutory provisions have also been construed elsewhere to include both of these situations. *See, e.g., State v. Anderson,* 94 Wash.2d 176, 616 P.2d 612, 615 (1980) (excluding from this class of murder only "acts aimed at or intended and inflicted upon a specific individual and no other"); *State v. Pettus,* 89 Wash. App. 688, 951 P.2d 284, 288 (1998) (interpreting crime to include conduct that "puts more than one person at risk," or "creates a risk of death without being specific as to the identity or position of the person upon whom the risk may fall").

### III.

■ Relying largely on its prior holding in *People v. Atkins,* 844 P.2d 1196 (Colo.App. 1992), *cert. denied,* (Colo. Feb. 1, 1993), the court of appeals in this case held that murder after deliberation is committed only if the perpetrator's malice is directed toward a single, identifiable individual, while extreme indifference murder requires proof of malice that is not directed against a single individual. It concluded that the jury found both, as well as conspiring and attempting to commit both, and that its findings were therefore logically inconsistent and contradictory. Because subsection (1)(d), following the 1981 amendments, however, restricts the required killing act to one evidencing an attitude of universal malice, rather than altering the mental state required for commission of the crime, the court of appeals erred in concluding that findings of extreme indifference and specific intent with regard to a particular individual are logically inconsistent.

■ Furthermore, the evidence in this case was sufficient to support findings of both.[2] While there was an abundance of evidence that the defendant and those in his car were specifically searching for P.M. to kill him, there was also evidence that they fired numerous shots in the direction of his vehicle, aware that other people whom they did not know or have grievances against were present in or around the vehicle. Although the boy they killed was not P.M., the jury was instructed as to deliberate murder according to a theory of transferred intent.[3] At the same time, however, the evidence was sufficient to permit a finding that they were aware their shooting was practically certain to cause death and was carried out under circumstances evidencing a willingness to take the lives of others without knowing or caring who they were.

Because the jury's findings were neither logically nor legally inconsistent, it is unnecessary for us to determine the appropriate remedy for special jury findings that could not logically be based on the same evidence. *Cf. People v. Frye,* 898 P.2d 559, 569 n. 13 (Colo.1995) (noting general agreement that verdicts convicting of two or more crimes where an element of one negates a necessary element of another, should be considered legally and logically inconsistent and should not be sustained.). Because, however, the mittimus reflects guilty verdicts of both deliberate murder and extreme indifference murder for killing the same victim, it must be corrected to reflect a single verdict of guilt for first degree murder. Unless entry of a judgment of conviction upon either theory would be barred by convictions of other offenses simultaneously entered against the defendant, *see People v. Glover,* 893 P.2d 1311, 1314 (Colo.1995),[4] a single, generic judgment

---

2. Although the court of appeals went too far in *Atkins* by finding that extreme indifference murder is logically inconsistent with a specific intent to kill a particular individual, there is every reason to believe, from its recitation of the evidence demonstrating an intentional murder of a competing gang member, that there may not have been sufficient evidence to support a finding of extreme indifference murder in that case.

3. No challenge to the sufficiency of evidence or adequacy of the instructions concerning deliberate murder is before this court.

4. In *Glover,* where the trial court refused to reach the merits of the defendant's postconviction challenge to a special finding of murder after deliberation, on the ground that his mittimus reflected a generic first degree murder conviction, which was also supported by a special finding of felony murder, we held that the trial court should have amended the mittimus to reflect a conviction for first degree deliberate murder and should have entertained the defendant's postconviction challenge because a third conviction for the underlying felony of robbery required the court to maximize sentences by vacating the

of conviction for first degree murder is the appropriate entry. *See People v. Lowe,* 660 P.2d 1261, 1270–71 (Colo.1983). Should they become important on appeal or in post-conviction proceedings, the jury's specific findings are adequately reflected in the special interrogatories.

The mittimus also currently reflects guilty verdicts only for conspiring and attempting to commit the extreme indifference murder of P.M., despite jury findings of guilt under both extreme indifference and deliberate murder subsections of the statute. The mittimus should be corrected to reflect a single, generic conviction for conspiracy to commit first degree murder and a single, generic conviction for attempt to commit first degree murder.[5]

### IV.

Because the jury's findings of extreme indifference murder and murder after deliberation were not inconsistent, the judgment of the court of appeals is reversed in part. Because, however, the mittimus does not accurately reflect the jury's verdicts and the effect of its finding that the defendant violated more than one subsection of the first degree murder statute, the case is remanded to the court of appeals with orders to direct the correction of the mittimus.

Justice EID does not participate.

---

defendant's conviction for the greater offense of felony murder, while retaining his convictions for deliberate murder and robbery. We nowhere suggested that entry of a single, generic first degree murder conviction, as prescribed by *People v. Lowe,* 660 P.2d 1261, 1270–71 (Colo.1983), would not be proper in the absence of such a merger or, for that matter, that the jury's special finding of felony murder could not still be relied

on in maximizing the defendant's sentence, if he were to successfully challenge his conviction for deliberate murder.

5. Apart from the consistency of extreme indifference and deliberate murder, no issues concerning the additional verdicts of conspiracy and attempt to murder P.M. are before this court.