2012 COA 7

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

**v.**

**Joel Matthew STOVALL, Defendant–Appellant.**

**No. 09CA0487.**

Colorado Court of Appeals, Div. III.

Jan. 19, 2012.

As Modified on Denial of Rehearing June 21, 2012.

John W. Suthers, Attorney General, Susan E. Friedman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Allison Ruttenberg, Boulder, Colorado, for Defendant–Appellant.

Opinion by Judge ROY.

¶ 1 Joel Matthew Stovall, defendant, appeals the trial court's orders denying his Crim. P. 35(a) and Crim. P. 35(c) motions. We affirm.

¶ 2 Specifically, defendant contends that (1) his plea was not knowing or voluntary because of the ineffective assistance of plea counsel; (2) the trial court erred in concluding that he was time-barred from challenging his non-class 1 felony convictions; and (3) his sentences were illegal because they required inconsistent findings of fact.

## I.  Claims Not Preserved

¶ 3 Defendant has asserted three claims of ineffective assistance of plea counsel that were not sufficiently presented to the trial court and, therefore, are not properly before us.  *See People v. Goldman*, 923 P.2d 374, 375 (Colo.App.1996) (allegations not raised in a Crim. P. 35(c) motion or during the hearing on the motion are not properly preserved and may not be raised for the first time on appeal).  These claims are that plea counsel rendered ineffective assistance by (1) failing to recognize and advise him of a viable constitutional challenge to a conviction for felony murder based on a predicate crime of petty offense escape (as contrasted with the statutory interpretation which is addressed later in this opinion); (2) failing to investigate whether the district attorney actually intended to seek the death penalty before the entry of his plea; and (3) not moving to withdraw the plea after the district attorney made a statement in open court that he could not ethically pursue the death penalty because, in his opinion, this was not a proper case and it was unlikely that the death penalty would be imposed.  Further, defendant's allegations of justifiable excuse or excusable neglect for the untimeliness of his Crim. P. 35(c) motion as to the non-class 1 felonies were also not properly presented to the trial court and are not preserved for our review.

## II.  The Facts

¶ 4 The underlying events giving rise to the charges began when defendant shot and killed a neighbor's dog on November 28, 2001.  After a third party reported that gunshots had been fired, a deputy sheriff contacted defendant and placed him under arrest for unlawful discharge of a firearm and cruelty to animals, both misdemeanors.  Defendant's twin brother (brother) then arrived on the scene carrying two concealed firearms and a handcuff key; he became aggressive toward the deputy and was arrested, handcuffed, and placed in the back seat of the patrol car without first being searched.  While en route to the station, brother began to unlock his handcuffs and the deputy sheriff confiscated the key.  After later removing one of his hands from the handcuffs, brother shot the deputy in the head killing him.

¶ 5 The patrol car ran off the road into a nearby ditch.  Defendant and brother removed the deputy's body and attempted to steal the patrol car.  However, they could not move the car because it was stuck in mud.  Defendant and brother then walked to brother's nearby residence where they obtained additional weapons and ammunition.  They then stole a pickup truck from a neighbor at gun point.

¶ 6 As the brothers were getting into the truck, two police officers approached in a patrol vehicle.  Defendant fired at the patrol car at least eight times, twice striking the driver in his lower back and permanently paralyzing him.  The brothers then fled in the stolen pickup truck.

¶ 7 During the next twenty-four hours, defendant and brother engaged in a series of high-speed chases with law enforcement officers from various jurisdictions, firing weapons at eighteen different officers without striking them.  After the pickup was disabled by police strips, the brothers ran into the surrounding woods where they remained overnight.  They peacefully surrendered to a park ranger the next morning.

¶ 8 Two attorneys from the Office of the Colorado State Public Defender (plea counsel), one a death penalty specialist, were appointed to represent defendant.  Counsel negotiated a plea agreement wherein defendant would plead guilty to all of the pending charges and be sentenced to consecutive maximum sentences in the presumptive range for each charge; in exchange, the prosecutor would not seek the death penalty as to either brother.[1]  Pursuant to that agreement, defendant pled guilty to one count of felony first degree murder with a predicate offense of escape for the death of the deputy sheriff, thirteen counts of attempted after deliberation first degree mur-

---

1.  The crimes were committed on September 28–29, 2001.  At that time, the penalty phase of a death penalty case was tried to a panel of three district judges.  That procedure was declared unconstitutional in *Woldt v. People*, 64 P.3d 256, 262 (Colo.2003); there, the death penalty was reversed and the case was remanded for resentencing to life imprisonment without parole.

der, five counts of attempted extreme indifference first degree murder, and one count of aggravated robbery.

¶ 9 After accepting his plea, the trial court sentenced defendant to life without the possibility of parole for first degree murder; forty-eight years for each of the eighteen counts of attempted first degree murder (after deliberation and extreme indifference); and thirty-two years for aggravated robbery, all sentences to be served consecutively in the custody of the Department of Corrections. Cumulatively, the sentences amount to life without the possibility of parole consecutive to 896 years. The pleas were entered, and defendant was sentenced, thirty-five days after the shooting of the dog.

¶ 10 The prosecution appealed the trial court's refusal to award restitution. That appeal was dismissed in this court as untimely filed, and the mandate issued, and defendant's conviction became final, on January 2, 2004.

### III. Ineffective Assistance of Counsel

¶ 11 Defendant first contends that his plea was not knowing and voluntary because of ineffective assistance of his plea counsel. He argues that plea counsel were ineffective because (1) they failed to inform him that escape from custody or confinement for a misdemeanor is a petty offense and could not be a predicate offense for felony first degree murder; and (2) they failed to properly investigate the case. We are not persuaded.

### A. Waiver

¶ 12 Initially, the prosecution argues that defendant has waived any right to raise ineffective assistance of plea counsel based on the following term in the plea agreement:

> The Defendant also acknowledges and agrees that in pleading guilty he voluntarily gives up the right to a preliminary hearing, a bond hearing, and to any possible defenses to the crimes charged. He also agrees to waive any Fourth, Fifth, or Sixth Amendment challenges concerning

the nature of his arrest, any statements made by him, *and any challenges to the effectiveness of his counsel.* Defendant further stipulates that the facts stated in the synopsis are true and he waives the establishment of any further factual basis.

(Emphasis added.)

¶ 13 We conclude that defendant may challenge his guilty plea on the grounds of ineffective assistance of counsel when that challenge goes to the issue of whether the plea was knowingly, voluntarily, and intelligently entered despite the express waiver, and, therefore, disagree.

¶ 14 Defendant acknowledged the plea agreement waiver in his motion for postconviction relief but argued that it was unenforceable because the plea agreement had not been honored, relying on *People v. McClellan,* 183 Colo. 176, 179, 515 P.2d 1127, 1128 (1973). We decline to consider this argument because we conclude that the waiver is not enforceable here for a far more fundamental reason.

¶ 15 In *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973), the defendant pled guilty to robbery and attempted murder and then commenced a habeas corpus proceeding in federal court challenging the systematic exclusion of African–Americans from grand jury service. He had not challenged the indictment before entering his guilty plea. The Supreme Court concluded that defendant's guilty plea foreclosed any inquiry into discrimination, stating:

> We hold that after a criminal defendant pleads guilty, on the advice of counsel, he is not automatically entitled to federal collateral relief on proof that the indicting grand jury was unconstitutionally selected. The focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity. . . .
>
> We thus reaffirm the principle recognized in the *Brady* trilogy [2]: a guilty plea represents a break in the chain of events

**2.** The Brady trilogy is *Brady v. United States,* 397 U.S. 742, 750, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970); *Parker v. North Carolina,* 397 U.S. 790, 797, 90 S.Ct. 1458, 1462, 25 L.Ed.2d 785 (1970).

which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann.*

411 U.S. at 267, 93 S.Ct. at 1607–08.

¶ 16 The same rule was announced in *People v. Isham,* 923 P.2d 190, 195 (Colo.App. 1995), which dealt with the right of a defendant to his or her counsel of choice. The division stated that a guilty plea waives all nonjurisdictional objections, including fundamental Sixth Amendment rights, unless the claim relates directly to the adequacy of the plea. Adequacy in this context means knowing, voluntary, and intelligent.

¶ 17 We recognize that defendant expressly waived his right to assert ineffective assistance of counsel in the plea agreement. However, we conclude that he can raise such a claim as to the issues of whether the guilty plea was knowing, voluntary, and intelligent. *See Mason v. United States,* 211 F.3d 1065, 1069 (7th Cir.2000) (discrete claims which relate directly to the negotiation of the waiver survive waivers); *Bridgeman v. United States,* 229 F.3d 589, 593 (7th Cir.2000) (ineffective assistance of counsel claims related to voluntariness of the waiver itself survive waiver); *United States v. Behrman,* 235 F.3d 1049, 1051 (7th Cir.2000) (constitutional claims that plea agreement resulted from ineffective assistance of counsel survive waiver of an appeal); *United States v. Pruitt,* 32 F.3d 431, 433 (9th Cir.1994) (expressing doubt that a plea agreement could waive a claim that plea counsel erroneously induced a defendant to plead guilty or accept a particular plea bargain).

### B. Ineffective Assistance of Counsel—Standard of Review

¶ 18 A claim of ineffective assistance of counsel presents a mixed question of law and fact. *People v. Valdez,* 178 P.3d 1269, 1278 (Colo.App.2007). We defer to the postconviction court's findings of fact so long as they are supported by the record, and we review its conclusions of law de novo. *Carmichael v. People,* 206 P.3d 800, 807–08 (Colo.2009).

¶ 19 "The benchmark for judging any claim of [ineffective assistance of counsel] must be whether counsel's conduct *so* undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To prevail on an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was constitutionally deficient; and (2) the deficient performance resulted in prejudice to the defendant. *Id.* at 688–89, 104 S.Ct. at 2065. To satisfy the prejudice prong, in the context of a guilty plea, the defendant must show that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 58–59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

### C. Predicate Offense for "Felony Murder"

¶ 20 Defendant contends that his plea counsel were ineffective because they failed to advise him that he could not be convicted of first degree felony murder with a predicate offense of escape pursuant to section 18–3–102(1)(b), C.R.S.2011, when the escape was a petty offense. We conclude that defendant's claim is based upon a misunderstanding of the law, and, therefore he has failed to state any facts that would constitute ineffective assistance of plea counsel.

¶ 21 Section 18–3–102(1)(b) states:

A person commits the crime of murder in the first degree if:

. . .

(b) Acting either alone or with one or more persons, he or she commits or attempts to commit arson, robbery, burglary, kidnapping, sexual assault as prohibited by section 18–3–402, sexual assault in the first or second degree as prohibited by section 18–3–402 or 18–3–403 as those sec-

tions existed prior to July 1, 2000, or a class 3 felony for sexual assault on a child as provided in section 18–3–405(2), *or the crime of escape as provided in section 18–8–208,* and, in the course of or in furtherance of the crime that he or she is committing or attempting to commit, or of immediate flight therefrom, the death of a person, other than one of the participants, is caused by anyone. . . .

(Emphasis added.) Escape was added to section 18–3–102(1)(b) in 1988. Ch. 124, sec. 16, 1988 Colo. Sess. Laws 712.

¶ 22 Cruelty to animals is a class 1 misdemeanor. § 18–9–202, C.R.S.2011. Prohibited use of weapons is a class 2 misdemeanor. § 18–12–106, C.R.S.2011. Section 18–8–208(5), C.R.S.2011, provides that escape from custody or confinement for a misdemeanor or petty offense is a class 1 petty offense. We reject defendant's argument that a conviction for first degree murder cannot be predicated on the commission of a class 1 petty offense.

■ ¶ 23 At the outset, the colloquial characterization of section 18–3–102(1)(b) as "felony first degree murder" is a misnomer. At common law, a death resulting from conduct occurring during the commission or attempted commission of any felony was murder for which the death penalty could be imposed. *See* Model Penal Code § 210.2 cmt. 6, at 30–31 (1980). However, the imposition of the death penalty under such circumstances was not considered overly severe because most felonies were punishable by death. *Id.* at n. 74.

¶ 24 Our statute does not make the killing of a person during the commission, attempt, or flight from the commission of *any* felony first degree murder. Instead, it designates specific crimes to which it applies. Most of those crimes are felonies, many of which are against the person. Many, but not all, escapes from custody or confinement are felonies because the offense for which the defendant is in custody or confinement is a felony.

¶ 25 Here, the General Assembly, by including all forms of escape under section 18–8–208, has clearly and unambiguously included a petty offense as a predicate offense for first degree felony murder. When the lan-

guage of a statute is plain and the meaning is clear, we need not resort to the interpretive rules of construction. *Smith v. Executive Custom Homes, Inc.,* 230 P.3d 1186, 1189 (Colo.2010); *People v. Banks,* 9 P.3d 1125, 1127 (Colo.2000); *People v. Tixier,* 207 P.3d 844, 847 (Colo.App.2008).

¶ 26 Therefore, we reject defendant's contention that counsel provided ineffective assistance when they advised him that he could be convicted of felony first degree murder under section 18–3–102(1)(b) based on the predicate offense of petty escape.

### D. Failure to Investigate Facts

¶ 27 Defendant also contends that plea counsel were ineffective because they did not examine the autopsy reports, police reports, or ballistic reports, and did not interview any witnesses prior to advising him to plead guilty. He asserts that if he had known that plea counsel had not examined these things, he would not have pled guilty. We are not persuaded.

■ ¶ 28 Defendant has failed to identify what exculpatory evidence, or failure of the evidence, plea counsel would have discovered had they conducted such an investigation. Nor has he specified which witnesses should have been interviewed and what they would have said that would have impacted his decision. Indeed, during the Crim. P. 35(c) hearing, defendant acknowledged that he had not looked at most of these materials and did not know what they contained. The only evidence before the postconviction court was defendant's self-serving testimony, which is, by itself, insufficient. *See Carmichael,* 206 P.3d at 807 (a defendant's self-serving testimony is not sufficient to establish ineffective assistance; defendant must present some objective corroborating evidence).

¶ 29 Therefore, we conclude that defendant's assertion, that had he known plea counsel had not thoroughly reviewed the evidence and interviewed witnesses he would not have pled guilty, is entirely speculative and insufficient to meet his burden of alleging facts that would allow the postconviction court to find that he was prejudiced by counsel's alleged failure to investigate. *People v.*

*Wiedemer,* 692 P.2d 327, 328 (Colo.App.1984) (concluding that the defendant's postconviction motion was properly denied where the evidence failed to establish anything more than mere speculation that the defendant was prejudiced).

## IV. Time Bar

¶ 30 We next address defendant's contention that the trial court erred in dismissing his Crim. P. 35(c) motion as time barred under section 16–5–402, C.R.S.2011, for the non-class 1 felony convictions. We perceive no error.

¶ 31 Section 16–5–402(1), C.R.S.2011, provides that "no person who has been convicted as an adult ... under a criminal statute of this or any other state of the United States *shall collaterally attack the validity of that conviction ... unless such attack is commenced within the applicable time period.*" (Emphasis added.) Under the statute, there is no time limit for class 1 felonies, but non-class 1 felony claims must be filed within three years after the date of conviction. *Id.* A defendant may file an untimely motion for postconviction relief but only, as relevant here, upon a showing that his or her failure to file a timely motion was occasioned by justifiable excuse or excusable neglect. § 16–5–402(2)(d), C.R.S.2011.

¶ 32 For purposes of the statute, defendant's "convictions" occurred, at the latest, on January 2, 2004, when the mandate issued in the prosecution's appeal of the trial court's refusal to enter an order of restitution. *See People v. Hampton,* 876 P.2d 1236, 1240 (Colo.1994) ("[T]he meaning of the word 'conviction' in section 16–5–402(1) refers to a conviction after a defendant's appeal has been exhausted."). Defendant did not file his Crim. P. 35(c) motion until June 4, 2007, six months after the time limit had expired.

## A. Handwritten Letter

¶ 33 As an initial matter, for two reasons we reject defendant's contention that his handwritten letter, sent to the court on July 14, 2003, tolled the statutory time limit.[3]

¶ 34 First, defendant never presented this argument to the trial court; indeed, neither he nor postconviction counsel ever referred to the handwritten letter as a Crim. P. 35(c) motion. Instead, both consistently referred to defendant's June 4, 2007 motion as his Crim. P. 35(c) motion. Thus, the argument is not properly preserved. *See Goldman,* 923 P.2d at 375.

¶ 35 Second, even assuming defendant's handwritten letter constituted a timely filed Crim. P. 35(c) motion, it did not raise any of the claims now being asserted. The letter addressed the district attorney's actions during plea negotiations and restitution proceedings. "[T]he timely commencement of a collateral attack fails to toll the limitations period with respect to additional postconviction claims not contained in the timely filed motion." *People v. Ambos,* 51 P.3d 1070, 1071–72 (Colo.App.2002).[4]

## B. Controlling Conviction

¶ 36 Next, defendant contends that because he pled guilty to a class 1 felony and non-class 1 felonies in one plea, the time limit for the class 1 felony controls the statutory limitation as to all of his convictions. However, that interpretation is not borne out by the plain and clear language of the statute. *Town of Telluride v. Lot Thirty–Four Venture, L.L.C.,* 3 P.3d 30, 35 (Colo.2000) ("In assessing the plain language, the court should not read a statute to create an exception that the plain language does not suggest, warrant, or mandate.").

¶ 37 Here, the time limits in section 16–5–402(1) are specifically categorized by the level of the offense for each individual conviction. Had the General Assembly intended the result that defendant urges—allowing the conviction of a class 1 felony to control the statutory limitation on all convictions arising out of a single criminal episode or plea—it could certainly have done so. *See*

---

3. We note that there is no authority, whether statute, rule, or appellate opinion, that recognizes a "tolling" of the time limit contained in section 16–5–402(1).

4. The *Ambos* division also rejected the proposition that an untimely postconviction motion "relates back" to the filing of a timely filed motion, though it did so in terms of "tolling."

*People v. J.J.H.*, 17 P.3d 159, 162 (Colo.2001) (appellate courts should not presume that the legislature used language idly). Therefore, we conclude that defendant's Crim. P. 35(c) motion was untimely as to his non-class felonies.

### V. Illegal Sentence

¶ 38 Next, we address defendant's argument that the sentence imposed on him was illegal because his convictions for attempted after deliberation first degree murder and attempted extreme indifference first degree murder required inconsistent findings of fact. We are not persuaded.

¶ 39 Defendant argues that a finding of a specific intent to kill a particular victim precludes a simultaneous finding of extreme indifference to the value of human life generally. He contends that because the convictions for attempted after deliberation first degree murder arose from the same incidents as the convictions for attempted extreme indifference murder, he could not have simultaneously formed a specific intent as to some victims and a general intent as to others. We do not agree.

¶ 40 Here, the information reflects that each attempted murder charge—after deliberation and extreme indifference—involved a different victim. "[A] defendant's intent may logically vary in committing crimes against separate victims." *People v. Lee*, 914 P.2d 441, 447 (Colo.App.1995). Further, the stipulated facts, which were jointly drafted, support a finding that defendant shot at thirteen different officers, specifically intending to kill them. At the same time, those facts also support a finding that defendant was firing numerous additional shots in the general direction of five other officers. Therefore, it is not inconsistent to conclude that defendant had the specific intent to take the life of the thirteen specific officers while at the same time evidencing an extreme indifference to life in general as to the five accompanying officers. *See Candelaria v. People*, 148 P.3d 178, 182–84 (Colo.2006) (concluding that it was not inconsistent to convict the defendant of both after deliberation and extreme indifference first degree murder); *see also Lee*, 914 P.2d at 447.

¶ 41 Consequently, we conclude that the trial court did not err in denying defendant's Crim. P. 35(a) motion without a hearing.

¶ 42 The orders of the trial court are affirmed. JUDGE WEBB and JUDGE FOX concur.