Opinion by JUDGE FOX
¶ 1 Defendant, Franco Romero, appeals from an order denying his motion for postconviction relief pursuant to Crim. P. 35(c) without an evidentiary hearing. We affirm.
I. Background
¶ 2 Romero was indicted for first degree murder for shooting A.S., a jury convicted him as charged, and he was thereafter sentenced to life in prison without the possibility of parole. Romero appealed his conviction and sentence, and a division of this court affirmed. People v. Romero, 2006 WL 3236122 (Colo.App. No. 04CA1221, Nov. 9, 2006) (not published pursuant to C.A.R. 35(f) ). The Colorado Supreme Court denied Romero's petition for a writ of certiorari. Romero v. People, 2007 WL 1395331 (Colo. No. 07SC51, May 14, 2007) (unpublished order). Romero then filed a Crim. P. 35(c) motion, which the People contested and the postconviction court denied without a hearing.
¶ 3 Romero appeals the court's order denying his Crim. P. 35(c) motion, contending that attorneys F.G., D.J., and R.C. ineffectively assisted him. We conclude that Romero was not entitled to a hearing on this claim.
II. Additional Background on Romero's Attorneys
¶ 4 The record reflects that attorney F.G. represented Romero in a prior, unrelated drug case. This representation ended when Romero violated parole and was sentenced to six years in Department of Corrections' custody.
¶ 5 F.G. next briefly represented Romero during an interview with two detectives at the police station. The interview related to the events in this case but occurred before Romero's indictment. Following Romero's arrest, F.G. visited him in jail several times, occasionally identifying himself as Romero's attorney in the jail visitation log. However, Romero never retained F.G. to represent him, and F.G. never entered an appearance or participated in any court proceedings related to this case.
¶ 6 Alternate defense counsel D.J. and R.C. were appointed after Romero's indictment and served as Romero's attorneys of record during all pretrial and trial proceedings.
III. Standard of Review
¶ 7 Crim. P. 35(c) proceedings are intended to prevent injustices after conviction and sentencing. People v. Rodriguez, 914 P.2d 230, 249 (Colo.1996). A Crim. P. 35(c) motion may be dismissed without a hearing if "the motion, files, and record in the case clearly establish that the allegations presented in the defendant's motion are without merit and do not warrant postconviction relief." Ardolino v. People, 69 P.3d 73, 77 (Colo.2003). For ineffective assistance of counsel claims, bare allegations of incompetency of counsel are insufficient to entitle a defendant to a hearing. See *901 Moore v. People, 174 Colo. 570, 571, 485 P.2d 114, 115 (1971).
¶ 8 Review of a summary denial of a postconviction motion presents a mixed question of law and fact. People v. Stovall, 2012 COA 7, ¶ 18, 284 P.3d 151. We review conclusions of law de novo, but we defer to findings of fact if supported by the record. Id .
IV. Attorney F.G.
¶ 9 Romero contends that F.G. rendered ineffective legal assistance when he (1) represented Romero during a pre-indictment police interview and (2) visited Romero several times in jail and offered him legal advice. We address and reject each contention.
A. Pre-Indictment Advice
¶ 10 Romero contends that F.G. ineffectively assisted him during his police interview when he failed to advise Romero of the consequences of submitting to police interrogation and a polygraph test. We reject this contention because Romero's right to representation had not yet attached.
1. Legal Standards
¶ 11 The Fifth and Sixth Amendments to the United States Constitution provide criminal defendants a right to counsel, People v. Vickery, 229 P.3d 278, 280 (Colo.2010), and this right includes the right to the effective assistance of counsel, Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Fifth and Sixth Amendments' protections, however, are not the same. Vickery, 229 P.3d at 280. The Fifth Amendment right to counsel attaches when a defendant is subjected to custodial interrogation, regardless of whether charges have been filed. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A custodial interrogation occurs when a person has been taken into custody or deprived of his freedom of action in some significant way. Id. In contrast, the Sixth Amendment right to counsel attaches only once charges are filed. McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).
2. Analysis
¶ 12 The postconviction court concluded that Romero's right to representation had not yet attached under either the Fifth or Sixth Amendments when he appeared with F.G. for a police interview and polygraph test. We agree.
¶ 13 Romero's Fifth Amendment right to counsel had not attached because the police interview was not custodial. See Miranda, 384 U.S. at 444, 86 S.Ct. 1602. Romero was not under arrest, and his freedom was not restricted in any significant way. See id . At a pretrial hearing, the trial court found that Romero voluntarily submitted to the interview, the detectives made no threats or promises to Romero in exchange for his cooperation, and Romero knew he was permitted to leave the interview at any time. Because the record adequately supports these findings, we decline to disturb them on appeal. See Dunlap v. People, 173 P.3d 1054, 1062 (Colo.2007).
¶ 14 Romero's Sixth Amendment right to counsel had also not attached because Romero had not yet been charged. See McNeil, 501 U.S. at 175, 111 S.Ct. 2204. To the contrary, the interrogation and polygraph occurred over a year before Romero was indicted.
¶ 15 Accordingly, Romero's ineffective assistance of counsel claim with regard to F.G.'s pre-indictment representation fails.
B. Post-Indictment Advice
¶ 16 Romero next contends that F.G. ineffectively assisted him during trial because F.G. visited Romero in jail and improperly advised him. In so doing, F.G. failed to tell Romero that F.G. represented the codefendant's interests, and failed to mention that F.G. had a pending criminal investigation against him. We reject Romero's claims because F.G. never represented Romero during any critical stages in this case, helped prepare his defense, or otherwise appeared on his behalf, and thus, the constitutional guarantee of effective assistance did not apply.
*902 1. Legal Standards
¶ 17 The Sixth Amendment right to effective assistance of counsel guaranteed under Strickland, 466 U.S. at 686, 104 S.Ct. 2052, "does not include the right to receive good advice from every lawyer a criminal defendant consults about his case." United States v. Martini, 31 F.3d 781, 782 (9th Cir.1994). Rather, for a lawyer's advice to constitute ineffective assistance of counsel, it must come from a lawyer who represents the criminal defendant, helps prepare his defense, or otherwise appears on the defendant's behalf in the case. Id. at 782 ; see Davis v. People, 871 P.2d 769, 772-79 (Colo.1994) (applying Strickland standard to defendant's attorney of record); Hagos v. People, 2012 CO 63, ¶¶ 16-28, 288 P.3d 116 (same); see also United States v. Howard, 47 M.J. 104, 106 (C.A.A.F.1997) ("We are not persuaded that Strickland provides the appropriate test for prejudice in a case where there is no attorney-client relationship.").
2. Analysis
¶ 18 Here, the record reflects that F.G. never represented Romero during any critical stages of this case. Nothing in the record demonstrates that Romero retained F.G. to represent him, F.G. prepared Romero's defense, or F.G. otherwise appeared in court on Romero's behalf at any point after Romero's indictment. See People v. Morley, 725 P.2d 510, 517 (Colo.1986) ("The relationship of attorney and client can be inferred from the conduct of the parties."). To the contrary, Romero's sworn affidavit that accompanied his Crim. P. 35(c) motion stated:
• "The Office of Alternate Defense Counsel appointed [D.J.] to be my attorney."
• "[R.C.] was appointed a few weeks later."
• "[F.G.]'s representation of me ... ended[.]"
• "Although [F.G.] never represented me in this murder case, he came to visit me several times in jail after I had been indicted."
• "After he no longer represented me, [F.G.] used his status as an attorney to visit me in jail on several occasions."
• "[F.G.] gave me legal advice exactly opposite from the advice my trial counsel gave me."
• "[F.G.] pressured me to ... answer questions about what I had talked about with my attorneys in this case."
• "[F.G.]'s actions and repeated jail visits made me very confused about who to trust, and who to listen to. I feel that he interfered with my attorney-client relationship with [D.J.] and [R.C.]."
¶ 19 These excerpts from the record demonstrate that D.J. and R.C., not F.G., represented Romero, and thus, the constitutional guarantee of effective legal assistance did not apply to F.G.'s alleged advice during the jail visits.[1] See Martini, 31 F.3d at 782. Moreover, D.J. and R.C., as counsel of record, prepared Romero's defense and had every opportunity to hold the prosecution to its burden of proof. See United States v. Cronic, 466 U.S. 648, 656-57, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). And there is no allegation - or support in the record - for the proposition that F.G. influenced how D.J. and R.C. conducted the trial.
¶ 20 Accordingly, Romero's ineffective assistance of counsel claim with regard to F.G.'s post-indictment advice fails. V. Attorneys D.J. and R.C.
¶ 21 Romero next contends that D.J. and R.C. ineffectively assisted him when they (1) allowed him to be tried while incompetent and (2) failed to object contemporaneously to alleged prosecutorial misconduct at trial. We disagree.
A. Legal Principles
¶ 22 To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance resulted in prejudice to him. Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052.
*903 ¶ 23 To establish the first prong of the Strickland test, the defendant must overcome the strong presumptions that counsel's conduct falls within the wide range of reasonable professional assistance and that the challenged action might constitute sound trial strategy under the circumstances of a particular case. Id. at 688-89, 104 S.Ct. 2052 ; Ardolino, 69 P.3d at 76. Judicial scrutiny of counsel's performance must be highly deferential. Ardolino, 69 P.3d at 76.
¶ 24 To establish prejudice, a defendant must demonstrate a reasonable probability that, but for counsel's ineffective assistance, the result of the proceeding would have been different. People v. Robles, 74 P.3d 437, 438 (Colo.App.2003).
¶ 25 Because a defendant must show both deficient performance and prejudice, a court may resolve the claim solely on the basis that the defendant has failed in either regard. People v. Garcia, 815 P.2d 937, 941 (Colo.1991).
B. Raising Incompetency
¶ 26 Romero claims that trial counsel's performance was ineffective because counsel failed to adequately raise and pursue the issue of Romero's incompetency, particularly considering Romero's low intelligence quotient (IQ) and his lack of medications at trial. We disagree.
1. Legal Standards
¶ 27 A criminal defendant may not be tried unless he is competent. Godinez v. Moran, 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). A defendant is competent to stand trial when he
does not have a mental disability or developmental disability that prevents [him] from having sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding in order to assist in the defense or prevents [him] from having a rational and factual understanding of the criminal proceedings.
§ 16-8.5-101(4), C.R.S.2014.
¶ 28 An attorney owes a defendant an overarching duty to advocate the defendant's cause. Strickland, 466 U.S. at 688, 104 S.Ct. 2052. If defense counsel has reason to believe that his client is incompetent, counsel is obligated to bring this matter to the trial court's attention and seek a reliable determination on the issue. Jones v. Dist. Court, 617 P.2d 803, 806 (Colo.1980).
2. Analysis
¶ 29 The record reflects, and the postconviction court found, the following facts with regard to Romero's incompetency claims:
• On December 10, 2002, defense counsel filed a motion to suspend trial so that a psychiatric examination could be conducted.
• On the morning of trial, January 6, 2003, defense counsel referenced the motion and reiterated concerns about Romero's incompetency. In response, the court vacated the trial date and ordered that Romero be evaluated.
• On March 15, 2003, Dr. Robert Miller submitted to the court an evaluation concluding that Romero was incompetent, and on April 7, 2003, the court made a preliminary finding that Romero was incompetent to proceed.
• On September 26, 2003, Dr. David Johnson submitted a report opining that Romero was competent to proceed and, based on Dr. Miller's and Dr. Johnson's conflicting evaluations, the court held a competency hearing on November 18, 2003.
• At the competency hearing, defense counsel conceded competency because Dr. Miller did not dispute Dr. Johnson's more recent finding of competency. The court found Romero competent to proceed to trial.
• On February 9, 2004, defense counsel informed the court that Romero was not receiving his medication at Colorado State Penitentiary (CSP), and requested that the court allow Romero to stay at the Denver County Jail to ensure he received his proper medication. The court declined to do so and continued the matter to the start of trial.
*904 • During a hearing on March 22, 2004, defense counsel again asserted that Romero was not competent to proceed due to his lack of medication at CSP. The court indicated that it would order that Romero be provided his medication.
• On April 28, 2004, defense counsel re-raised the issue of competency and requested to postpone the trial to have Romero re-evaluated. The court rejected counsel's request, finding that "the issue ha[d] basically been dealt with" and that the court would ensure Romero "gets the proper amounts of medication he is required to have."
¶ 30 These excerpts from the record demonstrate that, contrary to Romero's current contentions, defense counsel was not deficient in raising and pursuing the issue of Romero's incompetency. See Strickland, 466 U.S. at 688-89, 104 S.Ct. 2052. Rather, defense counsel raised the issue numerous times, and the court made adequate rulings on the record each time.
¶ 31 Because Romero fails to meet the first prong of the Strickland test, we need not address prejudice. See Garcia, 815 P.2d at 941. We conclude that the postconviction court did not err in dismissing these claims without an evidentiary hearing. See Ardolino, 69 P.3d at 77.
C. Contemporaneous Objections
¶ 32 Romero next contends that his trial counsel was ineffective for failing to object contemporaneously to improper prosecutorial statements at trial. We disagree.
1. The Postconviction Court's Ruling
¶ 33 The postconviction court denied this claim because Romero failed to demonstrate prejudice. In so doing, the court relied on the division's holding in Romero's direct appeal, which concluded that the prosecutor's statements did not prejudice Romero under a plain error standard of review. See Romero, No. 04CA1221, slip op. at 4-13. The postconviction court reasoned that "a plain error standard of review applies essentially the same standard" as a determination of prejudice under the second prong of Strickland . See People v. Villarreal, 231 P.3d 29, 34 (Colo.App.2009). The court then concluded that "when a defendant alleges ineffective assistance of counsel based on allegations of error raised and rejected under plain error review on appeal, the claims of ineffective assistance of counsel must fail," and denied Romero relief on those grounds.
¶ 34 We disagree with the court's conclusion because a lack of prejudice under plain error review does not establish a lack of prejudice under Strickland . Villarreal v. People, 2012 CO 64, ¶ 8, 288 P.3d 125. Rather, "[t]he plain error standard requires that an error impair the reliability of the judgment of conviction to a greater degree than the Strickland prejudice standard." Id. ; see also Hagos, ¶ 24 ("[I]neffective assistance of counsel claims allow for reversal upon a showing that an error impaired the reliability of the judgment of conviction to a lesser degree than plain error review would require.").
¶ 35 Accordingly, we review Romero's claims de novo to determine whether he is entitled to a hearing. See Stovall, ¶ 18.
2. De Novo Review
¶ 36 Romero asserts that counsel should have objected to (1) the prosecutor's improper perjury threat to his half-brother, B.L., on direct examination; and (2) the prosecutor's improper comments, during closing arguments, on witness credibility and Romero's guilt. We address and reject each contention in turn.
a. Failure to Object on Direct Examination of B.L.
¶ 37 A prosecutor's statement or question indicating his belief that a witness committed perjury is improper. People v. Lowe, 39 Colo.App. 312, 317, 565 P.2d 1352, 1355 (1977) ; see also People v. Paglione, 2014 COA 54, ¶ 14, 342 P.3d 552. Moreover, warning a witness of the penalty for perjury and thereby threatening, coercing, or otherwise driving the "witness off the stand" may constitute grounds for reversal. Webb v. Texas, 409 U.S. 95, 95-98, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972).
*905 ¶ 38 In light of these principles, Romero asserts that defense counsel should have objected to the following exchange, which occurred after B.L. testified numerous times that he could not recall his previous grand jury testimony implicating Romero as the shooter:
Q. (Reading the grand jury testimony) . Let's keep going. "Did he describe to you where he shot him? Yes. Did you see the gun? Yes. Describe the gun. It was chrome, looked like semi-automatic-about anywhere from .44 to .45 caliber." What-
A. Shoot, you know, I lied, you know, to the grand jury. You know I lied.
Q. You're admitting to lying to the material facts under oath to the grand jury?
A. Yes, I'm admitting that I lied. You know.
Q. Understand you can be charged with a Class 4 Felony in a habitual ready [sic], you will serve the rest of your life in jail?
A. Yes.
¶ 39 Even assuming that the prosecutor's statements were improper and that counsel's failure to object constitutes deficient performance, we conclude that Romero has failed to allege facts demonstrating prejudice. See Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052 ; Garcia, 815 P.2d at 941.
¶ 40 The prosecutor's reference to perjury was brief and did not silence or alter B.L.'s testimony. See Lowe, 39 Colo.App. at 317, 565 P.2d at 1355 (disapproving of prosecutor's references to perjury in light of their extended duration); see also Webb, 409 U.S. at 95-98, 93 S.Ct. 351 (condemning the judge's references to perjury because it effectively drove the witness off the stand). To the contrary, the record demonstrates that, following the exchange, the court stopped B.L.'s testimony sua sponte and appointed an attorney for him. Following this legal consultation, B.L. chose to continue testifying. B.L. then retracted his statement that he had previously lied but continued to state, as he had before the prosecutor's statements, that he could not recall ever implicating Romero as the shooter to a grand jury. Thus, even with court intervention, B.L.'s testimony was virtually the same before and after the prosecutor's references to perjury. Any objections by defense counsel would not have altered this outcome or affected the verdict. See Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052.
¶ 41 Nonetheless, Romero contends that he was prejudiced because, in addition to this witness, multiple "witnesses changed their stories after being threatened by the prosecut[or] with perjury prosecution." But because Romero did not include this argument in his Crim. P. 35(c) motion, we will not consider it for the first time on appeal. See People v. Gardner, 55 P.3d 231, 235 (Colo.App.2002).
¶ 42 Accordingly, counsel's failure to object was not prejudicial under Strickland and the postconviction court did not err in dismissing Romero's claims without a hearing. See Ardolino, 69 P.3d at 77.
b. Failure to Object During Closing Arguments
¶ 43 A prosecutor has wide latitude during closing arguments to comment on the evidence presented during trial and any reasonable inferences to be drawn therefrom. Domingo-Gomez v. People, 125 P.3d 1043, 1047 (Colo.2005). A prosecutor may employ rhetorical devices so long as he does not thereby induce the jury to determine guilt based on passion or prejudice, state his personal opinion about the guilt or credibility of witnesses, or attempt to inject irrelevant issues into the case. Id. at 1049 ; People v. Douglas, 296 P.3d 234, 249 (Colo.App.2012).
¶ 44 First, Romero contends that the defense should have objected to the following statement: "There are a few things that are consistent among the witnesses. They are all reluctant. They were all uncooperative, even [K.A.]. It [took] him less than half a day but he finally came through."
¶ 45 We see no error in these statements nor in counsel's failure to object to them. The prosecutor's statements did not improperly interject his personal opinion about K.A.'s credibility or improperly influence the jury. See Domingo-Gomez, 125 P.3d at 1047. The prosecutor referenced K.A.'s reluctance to testify; he did not assert his *906 personal belief as to the truth or falsity of K.A.'s trial testimony. See id. at 1049. Moreover, the statement was brief in the context of the argument as a whole and was cured by the prosecutor's later admonition to the jury that "[credibility is] for you to decide, not for us." See People v. Welsh, 176 P.3d 781, 788 (Colo.App.2007) ("Claims of improper argument must be evaluated in the context of the argument as a whole.").
¶ 46 Because the prosecutor's statements were not erroneous, we conclude that counsel's failure to object to them was not deficient, see Strickland, 466 U.S. at 686-87, 104 S.Ct. 2052, and we need not address prejudice, see Garcia, 815 P.2d at 941.
¶ 47 Second, Romero objects to the prosecutor's following statements, made during rebuttal closing argument:
This case is about the past. It's about an opportunity. It's about revenge. The undisputed fact [is] this man had [a] past, the opportunity and the revenge to get this done. And now you have eyewitness testimony and physical evidence to convict him. This man is guilty of first degree murder. There's no doubt in our minds. Do your job. Hold him accountable. Tell him: you are guilty of the death of [the victim]. You are guilty of first degree murder.
¶ 48 Even assuming that the prosecutor's statements were improper and that counsel's failure to object constitutes deficient performance, we conclude that Romero has failed to demonstrate prejudice as a result. See Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052 ; Garcia, 815 P.2d at 941.
¶ 49 In the context of the argument as a whole, the statements were brief and prefaced with a call to the jurors to come to their own decision based on all the evidence presented at trial. See People v. Rivas, 77 P.3d 882, 892 (Colo.App.2003). The prosecutor specifically asked the jury to consider "all the evidence, good and bad, physical and testimonial, the things you can feel, the things you can touch." See id. (evaluating allegations of improper misconduct in the context of the argument as a whole and finding no error where inappropriate comment was brief and made in the context of discussing evidence).
¶ 50 Moreover, the record contains overwhelming evidence of Romero's guilt. See Dunlap, 173 P.3d at 1098-99. Two witnesses testified that they saw Romero shoot the victim. Several others testified to seeing Romero follow the victim behind the tavern (where the shooting occurred) and to hearing several shots fired. Witnesses also testified that Romero was angry with the victim because he was a "snitch" who testified against Romero in a previous case. Further testimony indicated that Romero admitted to killing the victim within hours after the shooting.
¶ 51 The defense presented two witnesses. One testified that she did not witness the events but that another man (A.F.) had admitted to shooting the victim. The other, an eyewitness to the shooting, testified that A.F. was not the shooter and, in doing so, recanted his previous grand jury testimony to the contrary.
¶ 52 Considering the numerous witnesses who identified Romero as the shooter, we conclude that defense counsel's failure to object to the prosecutor's brief closing statements had no effect on the outcome of the trial. See Strickland, 466 U.S. at 686-87, 104 S.Ct. 2052. Consequently, Romero's claim of ineffective assistance of counsel fails, and the postconviction court properly denied it without a hearing. See Ardolino, 69 P.3d at 77.
¶ 53 Finally, we acknowledge Romero's contention that counsel's failure to contemporaneously object to any of these statements "resulted in [this court] being restricted to plain error review" when addressing prosecutorial misconduct on direct appeal. To the extent that Romero is arguing that this "reduced standard of scrutiny" affected the outcome of his appeal and thereby warrants reversal under Strickland, he cites no case law to support this contention. Because this argument was presented to us in a perfunctory and conclusory manner, we decline to review it. See People v. Wallin, 167 P.3d 183, 187 (Colo.App.2007). In any event, based on the foregoing analysis, the result would not have been different under harmless error review.
*907 VI. Conclusion
¶ 54 The order is affirmed.
JUDGE J. JONES and JUDGE ROY* concur.

That the attorney-client relationship had ended does not, however, negate F.G.'s ethical duties. See Colo. RPC 1.9 ; see also, e.g., People v. Shari, 204 P.3d 453, 461 (Colo.2009).

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S.2014.